IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY ANN BURR, | No. 2:16-CV-0153-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

    Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 16) and defendant's cross-motion for summary judgment (Doc. 18).

/ / /

/ / /

/ / /

1

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on October 27, 2011. In the application, plaintiff claims that disability began on September 16, 2011. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on January 28, 2014, before Administrative Law Judge ("ALJ") Bradlee S. Welton. In a July 2, 2014, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): obesity; degenerative disc disease of the lumbar and cervical spine with chronic pain; left hip arthritis; and mild right carpal tunnel syndrome;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: she can perform a range of light work; she can sit/stand/walk for six hours in an eight-hour day with regular breaks; she must have the option to sit or stand at will; she can perform frequent handling and fingering;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on December 7, 2015, this appeal followed.

# II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must

be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III. DISCUSSION

Plaintiff argues: (1) the ALJ erred in determining that certain impairments are not severe; (2) the ALJ failed to provide sufficient reasons for rejecting the opinions of treating doctors; (3) the ALJ failed to provide sufficient reasons for rejecting her testimony as not credible; and (4) due to these errors, the remainder of the ALJ's sequential analysis is flawed.

#### A. **Severity of Impairments**

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[1] In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined

---

[1] Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

Plaintiff argues that the ALJ erred in failing to find the following impairments to be severe: (1) fibromyalgia; (2) chronic pain syndrome; and (3) mental impairments.

### 1. Fibromyalgia

Regarding fibromyalgia, the ALJ stated:

> The undersigned finds fibromyalgia is not a medically determinable impairment because neither of the two sets of criteria for diagnosing fibromyalgia described in . . . SSR 12-2p are met. Notably, treatment records do not document ongoing evaluation and treatment for fibromyalgia. In fact, the only evidence of purported tender points is dated November 20, 2013, accompanying a medical source statement from treating sources, Betty Lebrun, FNP, and Delbert Beiler, M.D. (Ex. 21F, p. 4). Interestingly, the first and only mention of fibromyalgia appearing in the treatment records from these providers is documented on the same day the claimant presented requesting an evaluation for Social Security, on November 20, 2013 (Ex. 20F, p. 3). At the hearing, the claimant admitted testing for fibromyalgia was performed by a nurse practitioner, Ms. Lebrun, who is not an acceptable medical source. Accordingly, the undersigned finds fibromyalgia is not a medically determinable impairment.

The court finds no error in the ALJ's analysis. Under Social Security Rule 12-2p, the only medical source who can provide evidence of fibromyalgia is a licensed physician. While generally plaintiff is correct that a nurse practitioner working under the close supervision of a physician can, in some instances, be considered an acceptable medical source, such is not the

4

case for evidence of fibromyalgia. In this case, the record does not contain evidence from a physician indicating positive signs of fibromyalgia.

### 2. Chronic Pain Syndrome

Plaintiff argues that the ALJ erred by failing to discuss treating physician Dr. Otani's December 2011 diagnosis of chronic pain syndrome. The court finds no error. As discussed in more detail below, while Dr. Otani diagnosed chronic pain syndrome, the ALJ noted that Dr. Otani did not express any opinions regarding functional limitations resulting from that condition. By May 2012, plaintiff's pain was documented to be stable on the current medication regime, in June 2012, plaintiff's pain level was documented as "stable," and in October 2012, plaintiff denied any increased pain. In the absence of evidence that plaintiff's chronic pain syndrom caused more than a minimal effect on plaintiff's ability to work, the ALJ did not err.

### 3. Mental Impairments

As to plaintiff's mental impairments, the ALJ stated:

> The claimant's medically determinable mental impairments of anxiety and depression, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.

Plaintiff argues that the ALJ failed to develop the record regarding plaintiff's mental impairments. The court disagrees.

The ALJ has an independent duty to fully and fairly develop the record and assure that the claimant's interests are considered. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts. See id. This requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978). Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty. See Tonapetyan, 242 F.3d at 1150. The ALJ may

discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. See id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

In this case, the evidence was not ambiguous and the ALJ made no finding that the evidence was inadequate. Rather, evidence that mental impairments more than minimally affected plaintiff's ability to work was non-existent. While plaintiff states in her brief that "the ALJ failed to cite to any evidence, let alone medical evidence that clearly establishes that Ms. Burr has only mild limitations," plaintiff has failed to cite to the evidence of record the ALJ should have but failed to consider. As indicated above, plaintiff has the burden of establishing severity by providing medical evidence, and plaintiff's own statements are insufficient. See 20 C.F.R. §§ 404.1508, 416.908.

### B. Evaluation of Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831.

While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Plaintiff argues that the ALJ failed to provide sufficient reasons for rejecting the opinions of treating physicians Dr. Otani and Dr. Beiler.

1. Dr. Otani

As to Dr. Otani, the ALJ stated:

> The claimant's treatment with pain management specialist, Dr. Otani, is documented beginning December 2011 (Exs. 7F; 10F; 16F). At an initial office visit, the positive findings from physical examination included the following: the claimant was moderately obese; equivocal hyperesthesia on palpation of the lumbar paraspinals; and decreased range of motion of the lumbar spine (Ex. 7F, pp. 27-28). However, Dr. Otani noted the claimant had some inconsistencies on physical examination (Ex. 7F, p. 28). The claimant had increased pain with axial loading and, although straight leg raising was positive on the right at 20 degrees and 45 degrees on the left, the claimant was able to long sit when distracted and increased low back pain was isolated to the right ankle dorsiflexion. Pertinent negatives included the following: negative for standing flexion test; negative Stork test; range of motion of the upper and lower extremities were grossly

7

|   |   |
|---|---|
| 1 | intact; joints were without gross evidence of tenderness, effusion, or instability; tone was normal; manual muscle testing was 5 out of 5 in the upper or shortness. Neurological examination was generally unremarkable, except plantar reflexes were equivocal on the left (Ex. 7F, p. 28). Physical and neurological findings at subsequent office visits remained unchanged (Exs. 7F; 10F; 16F). Based on his clinical findings, Dr. Otani was careful with regard to prescribing opiates, and he indicated the claimant's pain appeared to be primarily neuropathic (Ex. 7F, p. 28). The claimant was educated on the importance of physical activity in controlling pain and regarding the connection between emotional stress and trauma and physical pain perception (Ex. 7F, p. 28). The claimant was determined to be an appropriate candidate for a trial of integrative pain management, and she received a referral to physical therapy (Ex. 7F, p. 28). As of January 2012, the claimant was noted to participate in two physical therapy sessions (Ex. 7F, p. 34). Thereafter, the record reflects the claimant missed five physical therapy appointments despite the medical evidence of record reflecting the claimant was making progress, with decreased pain with activities of daily living and decreased frequency and intensity of radiating pain to the right lower extremity (*See e.g.*, Ex.10F, p. 90). The claimant claimed she was told by the physical therapist that there was nothing that could be done for her, although this claim is not corroborated in the medical evidence of record (Ex. 10F, p. 90). In May 2012, the claimant also complained of left arm numbness and left shoulder pain (Ex. 10F, p. 50). Because some positive clinical findings were documented, further work-up was ordered (Ex. 10F, p. 50), the results of which were unremarkable (Ex. 10F, pp. 27, 73). In May 2012, the claimant's pain was documented to be stable on the current medication regime, in June 2012, the claimant's pain level was documented as "stable," and in October 2012, the claimant denied any increased pain (Ex. 10F, pp. 27, 50; 16F, p. 18). |

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons "for ignoring Dr. Otani's uncontroverted *diagnosis* of chronic pain syndrome." (emphasis added). Plaintiff, however, does not identify any particular medical *opinion* expressed by the doctor concerning plaintiff's functional abilities. Unlike Perez v. Astrue, 831 F. Supp. 2d 1168 (C.D. Cal. 2011), cited by plaintiff, where the claimant's doctor had expressed an opinion regarding functional limitations resulting from chronic pain syndrome and where the court found the ALJ had erred by failing to discuss this opinion, Dr. Otani has not expressed any opinions regarding limitations resulting from chronic pain syndrome or any other impairment. The court finds no error with respect to Dr. Otani.

///

2. Dr. Beiler

As to Dr. Beiler, the ALJ stated:

> The undersigned has considered the opinion of the treating sources with Biggs-Gridley, Betty Lebrun, FNP, and Delbert Beiler, M.D. The undersigned has given little weight to this opinion because it is brief, conclusory, and inadequately supported by clinical findings. . . .

The ALJ also noted that most of plaintiff's treatment with this source was provided by Ms. Lebrun, whom the ALJ characterized as not an acceptable medical source. The ALJ continued as follows:

> . . .As documented in a form with the title, *Medical Source Statement – Physical*, dated December 3, 2013, these sources assessed functional limitations that would preclude the claimant from working at the level of substantial gainful activity (Ex. 21F). Yet, the treatment notes from these providers primarily summarize the claimant's subjective complaints, diagnoses, and treatment without documenting significant positive objective findings and would support this opinion. As noted above, the findings from physical examination performed at periodic office visits were generally unremarkable, except for a few occasions (Ex. 20F, pp. 5, 7, 13). On the contrary, the claimant was documented to appear to be in no pain, walked without limping, had no pain on hip rotation or flexion bilaterally, and/or to have no edema of the lower extremities on several occasions (Ex. 20F, pp. 3, 4, 8, 9, 10, 13, 14). Further, the limitation assessed by these sources that the claimant needed to elevate her legs every hour is not supported by the record as a whole and is inconsistent with the treatment records from Biggs-Gridley, which document only one instance of positive lower extremity edema (Ex. 20F, pp. 3, 4, 6, 8, 9, 14). Accordingly, it appears these treating sources formed an opinion based largely on the claimant's subjective complaints with little consideration of positive objective clinical or diagnostic findings in their own treating records. In doing so, these treating sources seemed to accept uncritically as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, good reasons exist for questioning the reliability of the claimant's subjective complaints.

Plaintiff argues that the ALJ's statement that Dr. Beiler's opinion is conclusory and minimally supported is "not supported by substantial evidence in the record." According to plaintiff:

> . . .Treatment notes show that Ms. Burr was seen at the Briggs-Gridley Clinic for complaints of chronic pain, numbness, anxiety, and sleep disturbances from November 2012 to November 2013 (AR 730-

9

741).

While plaintiff is correct that she complained of chronic pain, numbness, anxiety, and sleep disturbances, the ALJ correctly concluded that the treatment notes do not show any objective evidence supporting plaintiff's complaints or Dr. Beiler's extreme opinions. A review of the treatment records from Biggs-Gridley supports the ALJ's summary. Notably, while one positive straight-leg test was observed in December 2012, the notes from that visit reflect no pain on hip flexion or rotation. Otherwise, the treatment records from this source are wholly unremarkable. Given the treatment record from Biggs-Gridley, the court finds no error in the ALJ's conclusion that Dr. Beiler's opinion is conslusory and unsupported by objective medical findings.

### C. Credibility Assessment

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

/ / /
/ / /
/ / /
/ / /
/ / /

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

///

///

///

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

In determining that plaintiff's testimony was not credible, the ALJ stated:

> The claimant testified to limited activities of daily living. Even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively benign medical evidence and other factors discussed in this decision. It appears the limited range of daily activities is a lifestyle choice and not due to any established impairment.

> The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. Notably, although the claimant was originally to be referred to neurosurgery, as of October 2011, based on the results of diagnostic testing, the claimant was determined not a surgical/neurosurgical candidate and, instead, was referred to pain

| | management (Ex. 6F, p. 4). |
|---|---|
| | The claimant's allegations of leg swelling are inconsistent with the objective medical evidence, which indicates an attempt by the claimant to exaggerate the severity of her symptoms. At the hearing, the claimant claimed she needed to elevate her legs regularly due to swelling from water retention, despite admitting she was taking water pills for this condition for about three months. Yet, the medical evidence of record documents only one instance of positive lower extremity edema (Ex. 20F, p. 5), and, rather, treatment records reveal the claimant was often negative for lower extremity edema (Ex. 20F, pp. 3, 4, 6, 7, 8, 14). The credibility of the claimant's subjective complaints of leg swelling are diminished in light of this apparent discrepancy. |
| | The claimant's hearing testimony and pre-hearing statements regarding her history of substance abuse is inconsistent. At the hearing, when asked by the undersigned whether she smoked marijuana, the claimant responded emphatically, "oh no." Yet, urine drug screening on March 21, 2012, August 17, 2012, and September 18, 2012, were positive for marijuana (Exs. 10F, pp. 43, 48; 16F, pp. 36, 43). This discrepancy diminishes the persuasiveness of the claimant's subjective complaints and alleged functional limitations. |
| | The credibility of the claimant's allegations regarding the severity of the claimant's symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record. The medical evidence indicates the claimant received only routine conservative treatment for complaints of musculoskeletal complaints. The lack of more aggressive treatment, including surgical intervention, is inconsistent with the alleged severity of the functional limitations imposed by the claimant's impairments and suggests the claimant's symptoms and limitations were not as severe as the claimant alleged. . . . |

The court finds no error in the ALJ's credibility analysis because, as the ALJ noted, plaintiff's complaints of totally disabling symptoms are contradicted by the relatively benign objective findings and conservative course of treatment. Furthermore, plaintiff's complaints of debilitating leg swelling is belied by the record which contains almost no objective evidence of edema in the lower extremities.

/ / /

/ / /

/ / /

/ / /

### D. Remainder of Sequential Analysis

Plaintiff argues that the remainder of the ALJ's sequential analysis is flawed due to the errors argued above. Because the court finds no errors with respect to the severity of plaintiff's impairments, evaluation of the medical opinions, or evaluation of plaintiff's credibility, the court does not agree.

### IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 16) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 18) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: March 27, 2018

  
  
**CRAIG M. KELLISON**  
UNITED STATES MAGISTRATE JUDGE